IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DENA JOAN RICHARDSON,<br><br>Plaintiff,<br><br>vs.<br><br>GRANITE CONSTRUCTION,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:06-CV-423 TS |

This matter comes before the Court on Defendant's Motion for Summary Judgment.[1] This motion is fully briefed. For the reasons discussed below, this motion will be granted in part and denied in part.

I.   Factual Background

Plaintiff Dena Joan Richardson ("Plaintiff") was employed as an apprentice mechanic by Defendant Granite Construction ("Granite"). Plaintiff belonged to a union that negotiated her wages with Granite.[2] A union steward worked at the shop where Plaintiff worked and handled

---

[1]Docket No. 25.

[2]Docket No. 27.

1

grievances that arose between Granite and union members.  Granite has anti-discrimination and anti-sexual harassment policies that are included in a pamphlet and an employee manual that are given to Granite employees, including Plaintiff.  The manual includes instructions on reporting harassment and Plaintiff was aware of these instructions.

Advancement at Granite was based on job classification and hours worked at that job.  Plaintiff worked as an apprentice mechanic and spent considerable time cleaning the shop, rather than learning skills that would assist her as she advanced in her position.  Therefore, when she advanced to the level of journeyman mechanic, her peers were "probably" better qualified than she was.[3]

Granite hired and fired employees on a seasonal basis.  Plaintiff worked more hours in the summer and was laid off in the winter, along with several other employees.  As part of Plaintiff's journeyman training, she obtained a state inspector license.  Plaintiff was the only one in her division with an inspector license for some time, and she felt that having her license was the only reason she was called back to work after winter layoffs.

Plaintiff was injured at work in November 2004.  Plaintiff reported the injury, went home to rest, and ultimately felt she was supposed to "'take care of it' through her own insurance."[4]  Plaintiff worked light duty for the week after her injury and felt that attitudes toward her generally changed after she was injured.

In 1994, a co-worker tried to touch Plaintiff from underneath a piece of equipment.[5]

---

[3] *Id.* at ¶ 44.

[4] *Id.* at ¶ 28.

[5] *Id.* at ¶ 46.

Plaintiff reported the incident and it never happened again. In 1998 or 1999, another employee picked Plaintiff up by her coverall straps and tried to touch her breasts, but Plaintiff kicked him in the crotch and he stopped.

Beginning in 2001, a laborer that had been hired to clean the shop began making comments to Plaintiff regarding her sexual orientation and the laborer's sexual abilities and prowess. Plaintiff complained about "comments" that were being made, that the laborer was not performing his job, and that Plaintiff was doing it for him.[6] She did not complain specifically about the sexual comments being made, only that she was "sick of hearing his comments . . . sick of hearing his mouth . . .[and] sick of cleaning up after him."[7] In response to Plaintiff's complaints, she and the laborer were instructed not to work together and the comments stopped.

In the winter of 2004 and continuing through January or February 2005, Plaintiff noticed pictures of naked men hung on pieces of equipment and around the shop on three different occasions. Plaintiff did not complain to anyone about the pictures, other than to mention them to Jerry Comer.

In January 2005, Plaintiff was not initially called back to work after winter layoffs because another employee had been certified to inspect equipment. After that employee was fired, Plaintiff did get her job back, but upon arriving back to work, discovered that her coveralls were no longer there.

Plaintiff was laid off in June 2005 because Granite did not have enough work. Plaintiff felt she was being laid off because of the circumstances surrounding her 2004 on-the-job injury,

---

[6]*Id*. at ¶¶ 55, 61.

[7]*Id*. at ¶ 61.

and her interactions with the laborer. On her way home from being laid off, Plaintiff spoke to somebody at the union about being laid off and was told there was nothing the union could do, and that Plaintiff could "file anything [she needed] to do through the state."[8] Plaintiff filed a charge of discrimination with the Utah Anti-discrimination and Labor Division ("UALD") and the EEOC on December 8, 2005, and received a Notice of Right to Sue on March 30, 2006.

II.  Procedural History

Plaintiff filed her Complaint on May 25, 2006 and filed an amended Complaint on July 27, 2006.[9] Plaintiff asserts three claims: 1) sex discrimination; 2) retaliation; and 3) negligent supervision. Defendant filed the instant motion for summary judgment on October 1, 2007.[10] In Plaintiff's Memorandum in Opposition, she withdrew her retaliation and negligent supervision claims, leaving only the claims for disparate treatment due to sex and hostile work environment based on Title VII.[11]

III.  Discussion

A.  Summary Judgment Standard

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[12] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return

---

[8]*Id.* at ¶ 69.

[9]Docket Nos. 1 and 2, respectively.

[10]Docket No. 25.

[11]Docket No. 34 at 12.

[12]*See* Fed. R. Civ. P. 56(c).

a verdict for the nonmoving party in the face of all the evidence presented.[13]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[14]

    B.    Title VII

Summary judgment on a Title VII sex discrimination claim is evaluated under the *McDonnell Douglas*[15] burden-shifting framework.  The first step requires plaintiff to establish a prima facie case for discrimination.[16]  Once a prime facie case is successfully established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action.[17]  "If the defendant makes this showing, the burden then shifts back to the plaintiff to show that the defendant's proffered justification is pretextual."[18]

Defendant asserts that summary judgment is proper because most of Plaintiff's claims fall outside Title VII's 300-day statute of limitations and, even if the statute of limitations is not a bar to Plaintiff's claims, she fails to establish a prima facie case of discrimination under Title VII.  Further, if a prima facie case is established, Defendant asserts that Plaintiff fails to establish pretext or evidence of a hostile work environment.

---

[13]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[14]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[15]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[16]*Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802).

[17]*Young v. Dillon Co., Inc.*, 468 F.3d 1243, 1249 (10th Cir. 2006).

[18]*Id.*

Plaintiff asserts that the statute of limitations does not apply because she was subjected to a continuous course of discriminatory behavior, adequate evidence establishing a prima facie case of discrimination is set forth, pretext is established and a hostile work environment existed due to the unwanted touching and inappropriate, sexually-charged comments made by Plaintiff's co-workers.

Plaintiff's complaint alleges a single claim for sex discrimination but asserts facts, in the complaint and subsequent pleadings, that appear to support both a claim for hostile work environment and a claim for disparate treatment based on gender. Defendant agrees that the only claims remaining after withdrawal of the retaliation claim and the negligent supervision claim are a "claim for disparate treatment due to sex and hostile work environment due to sex."[19] The Court will consider both claims below.

1. Statute of Limitations

Under Utah law, "Title VII requires claimants to file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice."[20] An evaluation of timeliness requires that a court "identify precisely the unlawful employment practice of which [plaintiff] complains."[21]

a. Hostile Work Environment

Hostile work environment claims "often involve a series of incidents that span a period of

---

[19] Docket No. 39 at 1.

[20] *Matthews v. Kennecott Utah Copper Corp.*, 54 F. Supp. 2d 1067, 1073 (D. Utah 1999).

[21] *Proctor v. United Parcel Service*, 502 F.3d 1200, 1206 (10th Cir. 2007) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980) (internal quotations omitted)).

longer than 300 days."[22]  The Supreme Court held that "as long as 'an act' contributing to a hostile work environment took place no more than 300 days before the plaintiff filed an EEOC charge, a court may consider the complete history of acts comprising that hostile work environment."[23]  "Even so, however, an employee may not unreasonably delay the filing of a hostile work environment claim."[24]

Plaintiff alleges that she was subjected to a continuous pattern of discrimination, evidenced by the off-color comments made by co-workers regarding her sexual orientation, by male pornography posted on equipment and around the shop, by her spending inordinate amounts of time cleaning the shop, rather than learning skills necessary to her position as a journeyman mechanic, and by the response to her work-related injury in late 2004.  The parties agree that at least some of these actions occurred prior to February 11, 2005, which is 300 days prior to the date that Plaintiff filed her UALD charge.  However, Plaintiff argues that because she was subjected to a continuous course of discrimination and at least one incident of discriminatory practice fell within the charging period, none of Plaintiff's claims are time-barred.

The Court finds that with respect to Plaintiff's hostile work environment claim, the allegedly discriminatory acts that would constitute a hostile work environment, all fell outside the 300-day charging period and are therefore time-barred.  Plaintiff was touched from underneath a piece of equipment in 1994, was picked up by her coveralls and harassed in 1998 or 1999, was subjected to the laborer's sexual comments in 2001, and observed pornographic

---

[22]*Duncan v. Manager, Dept. of Safety, City and County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005).

[23]*Id*. (citing *Nat.'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

[24]*Id*.

pictures hung on equipment in January or February 2005 at the latest. Even if Plaintiff could demonstrate that she saw pornographic pictures on equipment after February 11, 2005, she did not complain about the pictures to her supervisors, nor did she mention the pictures in her UALD filing.

Further, considering as true all the facts alleged by Plaintiff, the Court finds that no reasonable jury could find a pervasive or severe hostile work environment. Title VII of the Civil Rights Act prohibits hostile work environment sexual harassment by an employee's supervisor.[25] An employer is vicariously liable for sexual harassment by a supervisor. However, when no tangible employment action is taken, an employer's liability is subject to an affirmative defense which looks to whether 1) the employer exercised reasonable care to prevent and correct any sexually harassing behavior, and 2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.[26] On a consideration of a totality of the circumstances, the harassment must be sufficiently severe or pervasive to alter the conditions of the employment and create a subjectively and objectively abusive working environment.[27] If an employer cannot be held vicariously liable, then the court need not consider whether a hostile work environment existed.[28]

The Court finds that Defendant took reasonable care to prevent and correct any harassing behavior, after Plaintiff's complaints regarding the touching under the equipment and the

---

[25] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

[26] *Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

[27] *Id.*

[28] *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000) (in the absence of employer liability, court need not reach issue of hostile work environment).

harassment by the laborer.  Plaintiff's supervisor instructed Plaintiff and the laborer to not work near each other.  The other instances Plaintiff complains of in this suit do not rise to the level of a pervasive or severely hostile work environment.

In addition, Plaintiff admits that she knew of Granite's sexual harassment policy but did not avail herself of the procedure in place for dealing with sexual harassment on the job. Therefore, Defendant has also established a viable defense under *Farragher/Ellerth*.  The Court finds that summary judgment on Plaintiff's claim for hostile work environment is proper.

### b. Disparate Treatment Due to Sex

Plaintiff has established that the only act that occurred within the charging period is Plaintiff's final termination in June 2005.  Plaintiff's UALD charge and subsequent filings allege that this termination was due to facts grounded in disparate treatment due to sex, which, as the Court has previously stated, is considered separately from the hostile work environment claim. Therefore, because Plaintiff's termination occurred within the charging period and Plaintiff alleges that her termination was due to facts that are separate from those supporting her claim for hostile work environment, the Court finds that this claim is not barred by the statute of limitations.

### 2. Prima Facie Case

To make a prima facie case for sex discrimination under Title VII, a plaintiff must establish (1) membership in a protected class; (2) an adverse employment action; (3) qualification for the position at issue; and (4) less favorable treatment than others not in the protected class.[29]

---

[29]*Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff asserts that because she is a woman, she was not properly trained for her position, though she continued to advance based on the number of hours worked, as required by the union. She alleges that she was forced to spend the bulk of her time cleaning the shop and chasing parts, rather than learning her work duties as an apprentice or a journeyman. She also asserts that while she was paid the same hourly rate as her male counterparts, she was not allowed to work the same number of hours and that her overall pay was therefore reduced. Ultimately, Plaintiff was terminated.

The Court finds that Plaintiff is a member of a protected class and that she suffered an adverse employment action when she was terminated in June 2005. Whether she was qualified for the position of journeyman mechanic is not in dispute – Plaintiff concedes that she was less qualified than her male counterparts but alleges that her lack of qualification was due to disparate treatment. Plaintiff also concedes that other male workers were also laid off when work was slow, but the parties dispute whether she worked less hours than her male counterparts.

Defendant offers a reduction in workforce as a legitimate, non-discriminatory justification for Plaintiff's June 2005 layoff. However, Plaintiff asserts that layoffs historically occurred at the end of the year, not the beginning of the summer and that the only other employee who was laid off at the same time was let go for other behavior issues, not because of a reduction in force. Therefore, the Court finds that because a genuine issue of material fact exists as to whether Plaintiff's lack of qualifications and the number of hours she was allowed to work were due to disparate treatment based on gender, and as to the justification for her June 2005 layoff, summary judgment is inappropriate at this juncture.

IV.   Conclusion

For the reasons discussed above, Plaintiff's claim for hostile work environment is time-

barred because the discriminatory actions complained of in Plaintiff's UALD filing occurred outside the 300-day charging period. There remain genuine issues of material fact regarding Plaintiff's disparate treatment claim. It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 25) is DENIED IN PART and GRANTED IN PART.

DATED   May 6, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge